No. 15-1392

_____

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

Jacqueline Galloway, on behalf of herself and all others similarly situated,
Plaintiff - Appellant,

v.

Santander Consumer USA, Inc.,
Defendant - Appellee.

_____

On Appeal from the United States District Court for the District of Maryland
No. 13-3240

_____

**REPLY BRIEF OF APPELLANT**

_____

CORY L. ZAJDEL
Z LAW, LLC
301 Main Street, Suite #2-D
Reisterstown, MD 21136
clz@zlawmaryland.com
(443) 213-1977

Counsel for Plaintiff-Appellant

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

ARGUMENT .............................................................................1

I.    THE CONTRACTUAL RELATIONSHIP BETWEEN GALLOWAY
AND SANTANDER IS NOT CONTROLLED BY THE
AMENDMENT AGREEMENT .................................................1

    A.    The RISC is the Applicable Contract Unless Galloway and
CitiFinancial Auto Formed a Contract Subsequent
Thereto ..........................................................................2

    B.    The Amendment Agreement is Not a Binding Contractual
Obligation Between Galloway and Santander ......................2

        1.    CitiFinancial Auto Did Not Sign the Amendment
Agreement ...........................................................3

        2.    Neither CitiFinancial Auto or Galloway Performed Under
the Terms of the Amendment Agreement ....................5

        3.    Galloway and CitiFinancial Auto Were Still Negotiating
the Terms of an Amendment to the RISC After the
Proposed Effective Date and Galloway's Execution of the
Amendment Agreement .........................................6

    C.    The Third Contract Does Not Contain a Written Agreement to
Arbitrate ........................................................................9

II.    GALLOWAY WAS ENTITLED TO A JURY TRIAL BECAUSE
SHE PROVIDED SUFFICIENT EVIDENCE THAT THERE WAS
NO MEETING OF THE MINDS OF ALL THE TERMS OF THE
WRITTEN AMENDMENT AGREEMNET .................................10

i

III.    SANTANDER'S ESTOPPEL ARGUMENT IS NOT APPLICABLE
        TO THE RISC OR THE THIRD CONTRACT ...........................................14

CONCLUSION ........................................................................................................15

CERTIFICATE OF COMPLIANCE.......................................................................16

CERTIFICATE OF FILING AND SERVICE .......................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*All State Home Mortg., Inc. v. Daniel*, 977 A.2d 438 (Md. App. 2009) ..................3

*Banner Entertainment, Inc. v. The Superior Court of Los Angeles County*,
    62 Cal. App. 4th 348 (1998) ........................................................13

*Clar Productions, Ltd. v. Isram Motion Pictures Production Services, Inc.*,
    529 F. Supp. 381 (S.D.N.Y. 1982) ...............................................11

*Cochran v. Norkunas*, 919 A.2d 700 (Md. 2007) ....................................................7

*Drews Distributing, Inc. v. Silicon Gaming, Inc.*,
    245 F.3d 347 (4th Cir. 2001) .......................................................11

*Eastover Stores, Inc. v. Minnix*,
    150 A.2d 884 (Md. 1959) .............................................................3

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir.2009) ...........11

*Magness Petroleum Company v. Warren Resources of California, Inc.*,
    127 Cal. Rptr. 2d 159 (2003) ................................................13, 14

*Moses.com Securities v. Comprehensive Software*,
    263 F.3d 783 (8th Cir. 2001) .............................................7, 8, 13

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*,
    636 F.2d 51 (3d Cir. 1980) .....................................................10, 11

*Spaulding v. Wells Fargo Bank, NA*, 714 F.3d 769 (4th Cir. 2013) .........................3

## STATUTES

9 U.S.C. § 4 ..........................................................................................10

# ARGUMENT

Appellee Santander Consumer USA, Inc. ("Santander") asks this Court to affirm the opinion of the United States District Court for the District of Maryland and compel Appellant Jacqueline Galloway ("Galloway") to arbitrate this action based on numerous flawed legal premises and without granting Appellant a jury trial on the formation of the Amendment Agreement.  As described herein, CitiFinancial Auto never signed the Amendment Agreement, neither CitiFinancial Auto or Appellant performed in accordance with the Amendment Agreement and Appellant and CitiFinancial Auto continued to negotiate the terms of any amendment to the Retail Installment Sales Contract ("RISC") after Appellant signed the Amendment Agreement.  For these reasons and as further discussed in Appellant's Opening Brief, this case must be reversed and remanded to the United States District Court for the District of Maryland ("USDC") since there is no basis to conclude that arbitration of any dispute is required.

## I. THE CONTRACTUAL RELATIONSHIP BETWEEN GALLOWAY AND SANTANDER IS NOT CONTROLLED BY THE AMENDMENT AGREEMENT

Three contracts could potentially apply to the account at issue on this appeal - (1) the RISC entered into on March 3, 2007 (JA 19-20); (2) the Amendment Agreement dated October 31, 2008 and purportedly entered into when Galloway made a payment to CitiFinancial Auto on December 13, 2008 (JA 23 and 25-30);

1

or (3) the third contract entered into sometime after November 14, 2008 (JA 17 at ¶ 23-4). The only purported contract of the three that Santander contends contained a written arbitration agreement is the Amendment Agreement. Accordingly, if this Court finds that the contractual relationship is governed by the RISC or the third contract this case must be reversed and remanded.

### A.     The RISC is the Applicable Contract Unless Galloway and CitiFinancial Auto Formed a Contract Subsequent Thereto

The parties agree that Galloway's RISC (JA 19-20) originally governed the contractual relationship between Galloway and CitiFinancial Auto and any subsequent assignee. The RISC specifically stated that "[a]ny change to this [RISC] must be in writing and we must sign it. No oral changes are binding." Galloway and CitiFinancial Auto, therefore, determined that assent to any changes to the RISC must be evidenced by a writing that contained CitiFinancial Auto's signature. Unless Santander can point to some other written agreement supplanting the RISC, the RISC controls the contractual relationship between Galloway and Santander. There is no requirement to arbitrate disputes in the RISC.

### B.     The Amendment Agreement is Not a Binding Contractual Obligation Between Galloway and Santander

The Amendment Agreement can only control the contractual relationship between Galloway and Santander if there is sufficient evidence of an offer and

acceptance of the Amendment Agreement's specific terms between Galloway and CitiFinancial Auto.  Since it is beyond any doubt that Galloway made an offer to CitiFinancial Auto by executing the Amendment Agreement,[1] the discussion related to the Amendment Agreement herein focuses on the evidence related to CitiFinancial Auto's purported acceptance of the Amendment Agreement.  This Court's review of the facts must be in a light most favorable to Galloway with the understanding that Santander had the burden of proof, production and persuasion.

### 1.    CitiFinancial Auto Did Not Sign the Amendment Agreement

Under well settled Maryland law, acceptance of a contract does not require a signature of a party to the contract unless "the terms of a contract make the parties' signatures a condition precedent to the formation of the contract."  *All State Home Mortg., Inc. v. Daniels*, 977 A.2d 438, 447 (Md. App. 2009) (citations omitted); *Eastover Stores, Inc. v. Minnix*, 219 Md. 658, 665, 150 A.2d 884, 888 (Md. 1959) (stating that no contract is formed until execution of a written document where the parties previously agreed that any contractual obligation between the parties would not be binding and effective until reduced to writing and executed by the parties);

---

[1] As discussed in the Opening Brief (ECF #11 at 23-4) and as the USDC concluded (JA 56), CitiFinancial Auto reserved the right for "further review" and "approval[.]"  JA 25.  Maryland law is clear that a reservation of power to approve a contract is not an offer, but rather, an invitation to make an offer.  *Spaulding v. Wells Fargo Bank, NA*, 714 F.3d 769, 778 (4th Cir. 2013) (finding that a purported contractual offer stating that "we determine if your qualify" would require further approval and is therefore not a contractual offer).

3

ECF #11 at 17-22; ECF #15 at 30 (acknowledging that "Galloway correctly states that an exception to this rule exists when the terms of the contract make the parties' signature a condition precedent to the formation of the contract."). The RISC between Galloway and CitiFinancial Auto specifically required that in order for the Amendment Agreement to create a new contractual obligation between Galloway and CitiFinancial Auto and supersede the RISC that the Amendment Agreement needed to be in writing and signed by CitiFinancial Auto.[2] JA 20 (emphasis in

---

[2] Santander asserts that Galloway waived this argument by not raising it below and that the condition precedent requiring any amendment be in writing and signed by CitiFinancial Auto must be in the Amendment Agreement in order for Galloway to rely on the condition precedent. In the first instance, Santander's assertion that Galloway did not raise the argument that a condition precedent requiring the signature of CitiFinancial Auto arose from the RISC is absurd. Galloway raised this identical argument in support of her Motion for Leave to File First Amended Class Action Complaint and that Motion was appealed to this Court. District Court Docket #21 at 3-8 (arguing that the "RISC between Galloway and CitiFinancial sets forth two specific condition precedents before any modification to the RISC is binding - (1) the amendment to the RISC must be in writing and (2) the amendment to the RISC must be signed by CitiFinancial."). Galloway cannot be faulted for the District Court's failure to address this argument in its Memorandum Opinion.

Moreover, Santander's argument that any condition precedent must be in the Amendment Agreement and not in the RISC is rebutted by common sense contractual interpretation (the RISC controlled the contractual relationship between Galloway and CitiFinancial Auto until a binding subsequent agreement took its place) and Santander's own arguments. Santander states in its Opposition Brief that the parties could not amend the RISC by oral agreement because the RISC specifically "does not permit oral modification or amendment[.]" ECF #15 at 45. Galloway does not comprehend how the identical clause containing the writing, signature and no oral amendments requirements apply when it would benefit Santander and do not apply when they would be to Santander's detriment. The

original) ("**HOW THIS CONTRACT CAN BE CHANGED.** This [RISC] contains the entire agreement between you and us relating to this [RISC]. Any change to this [RISC] must be in writing and we must sign it. No oral changes are binding."). Santander has produced no evidence that CitiFinancial Auto ever signed the Amendment Agreement.

### 2. Neither CitiFinancial Auto or Galloway Performed Under the Terms of the Amendment Agreement

Although Santander would have this Court believe that Galloway and CitiFinancial Auto entered into the Amendment Agreement and performed in accordance with the Amendment Agreement, Galloway has unequivocally denied the existence of the Amendment Agreement and every piece of evidence in the record tends to prove that her assertion is accurate. As explained in the Opening Brief (ECF #11 at 26 (citing JA 26)), the Amendment Agreement had an effective date of October 31, 2008, each monthly payment obligation was due on the fourteenth (14th) of each month, the principle amount owed was twenty thousand two hundred thirteen dollars and fifty cents ($20,213.50), the monthly payment obligation was $365.57, allowable late fees were thirty six dollars and fifty five cents ($36.55). Nonetheless, neither Galloway or CitiFinancial Auto performed under the terms outlined in the Amendment Agreement. As explained in more

---

signature and writing requirement contained in the RISC relating to any subsequent amendment to the RISC was a condition precedent to the formation of a subsequent contract. ECF #11 at 16-22.

detail in the Opening Brief (ECF #11 at 26-32), the following chart details the known differences between the terms of the Amendment Agreement and the performance of any contract between Galloway and CitiFinancial Auto:

|  | AMENDMENT AGREEMENT | ACTUAL PERFORMANCE |
|---|---|---|
| Principal Amount Owed | $20,213.50 | More than $20,213.50 |
| Monthly Payment | $365.57 | $366.43 |
| Effective Date | October 31, 2008 | After October 31, 2008 |
| Payment Due Date | 14th of each month | 13th of each month |
| Late Fee | $36.56 | $36.64 |

These differences between the terms of the Amendment Agreement and the actual performance of any contractual obligations between the parties relate to essential terms of any contract between Galloway and CitiFinancial Auto. These differences further clarify that Galloway and CitiFinancial Auto did not enter into a contract under the terms of the Amendment Agreement.

        3.    Galloway and CitiFinancial Auto Were Still Negotiating the Terms of an Amendment to the RISC After the Proposed Effective Date and Galloway's Execution of the Amendment <u>Agreement</u>

Only one piece of evidence in the record has any relevance in explaining why neither Galloway or CitiFinancial Auto performed in accordance with the

Amendment Agreement that would have been effective beginning on October 31, 2008 had all parties agreed to the terms of the Amendment Agreement - Galloway and CitiFinancial Auto were still negotiating the terms of any amendments to the RISC after November 14, 2008 which is after Galloway executed the Amendment Agreement.   JA 17 at ¶ 23.   Santander failed to produce any evidence from CitiFinancial Auto's account records or communication logs regarding the approval of the Amendment Agreement or contradicting Galloway's representation that she was still negotiating with CitiFinancial Auto after execution of the Amendment Agreement.   *Cochran v. Norkunas*, 919 A.2d 700, 716 (Md. 2007) (stating that in order to "create a contract, notice of acceptance must be communicated to the offeror").   If CitiFinancial Auto accepted the Amendment Agreement offered by Galloway as the USDC determined, why would the only relevant evidence contradict that determination.

The United States Court of Appeals for the Eighth Circuit confronted a case almost identical factually to the evidence in the record in this case in *Moses.com Securities v. Comprehensive Software*, 263 F.3d 783 (8th Cir. 2001).   In *Moses.com*, two commercial entities were attempting to negotiate a licensing agreement.   An initial draft of the licensing agreement from Comprehensive Software included a "narrow" arbitration provision.   A counter-proposal from Moses.com contained a "detailed and broad" arbitration provision.   Comprehensive

7

Software provided another draft version of the licensing agreement with an arbitration provision almost "identical to the one in Moses.com's draft[.]" Moses.com and Comprehensive Software later exchanged two more draft licensing agreements containing "an arbitration clause identical to the one in the [earlier] draft." Importantly, "[n]one of the drafts was ever signed by both parties." *Id.* at 784. Litigation ensued and Comprehensive Software moved to compel arbitration against Moses.com. At the evidentiary hearing on the motion to compel arbitration, the two parties provided opposing evidence on whether the arbitration agreement was a final and binding agreement between the parties. Comprehensive Software testified that all the parties had agreed to the arbitration provision. On the other hand, Moses.com testified that it "never believed the parties entered into a final agreement on the arbitration clause." The District Court concluded that "although the parties may have reached initial agreement on the terms of an arbitration provision, the parties' understanding that they were free to negotiate changes to the arbitration provision belies [Comprehensive Software]'s argument that the parties reached final agreement on the provision." This is the case even though Moses.com broadened the original arbitration provision contained in the first draft of the licensing agreement and even though each draft version of the licensing agreement thereafter included the identical arbitration clause. The United States Court of Appeals affirmed the District Court and stated that the "District

Court understood [the testimony] to mean that the arbitration clause was still open to further negotiation."

The continued negotiation between Galloway and CitiFinancial Auto after Galloway's execution of the Amendment Agreement undermines any argument that CitiFinancial Auto accepted the terms of the Amendment Agreement and entirely supports Galloway's argument that CitiFinancial Auto never accepted the terms of the Amendment Agreement.[3]

C.     The Third Contract Does Not Contain a Written Agreement to Arbitrate

Galloway provided evidence to the United States District Court for the District of Maryland that at some point after November 14, 2008, CitiFinancial Auto lowered her payment from $487.46 to $366.43.  JA 17 at ¶ 23.  But the terms of this agreement between CitiFinancial Auto and Galloway, including all of the final terms agreed to related to the $366.43 payment and any purported arbitration agreement, are not contained in the Amendment Agreement or any other writing in the JA or the record.  JA 17 at ¶ 24.  Santander has not produced any evidence that an agreement containing all the final terms lowering Galloway's payment to

---

[3] Santander seems to argue that Galloway waived any requirement that CitiFinancial Auto sign the Amendment Agreement as required by the RISC.  ECF #15 at 34-40.  This argument fails to recognize that both CitiFinancial Auto and Galloway were still negotiating the terms of the third contract and no deal had been finalized at the time when Santander asserts Galloway had waived the requirement of a signature on any amendment to the RISC.

$366.43 each month and also containing an arbitration agreement between herself and CitiFinancial Auto was in writing - a requirement that was both statutory (9 U.S.C. § 4) and contractual.  JA 20 (stating that "[a]ny change to this contract must be in writing and we must sign it.  No oral changes are binding.").  Accordingly, there is no evidence in the JA or record in this case that any agreement between Galloway and CitiFinancial Auto contained a written agreement to arbitrate.

## II.    GALLOWAY WAS ENTITLED TO A JURY TRIAL BECAUSE SHE PROVIDED SUFFICIENT EVIDENCE THAT THERE WAS NO MEETING OF THE MINDS OF ALL THE TERMS OF THE WRITTEN AMENDMENT AGREEMENT

The District Court erred by making factual findings that should have been left to a jury.  Since Galloway unequivocally denied that a meeting of the minds was reached in the written Amendment Agreement and she supported this unequivocal denial with an affidavit affirming the denial along with evidence that CitiFinancial Auto did not accept all the terms of the written Amendment Agreement, the *Federal Arbitration Act*, 9 U.S.C. § 4 requires that the question of whether there was a meeting of the minds in a written agreement be decided by a jury and not the Court.

"Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Par-Knit Mills v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3rd Cir. 1980)

(holding that a jury is required to determine whether there was a meeting of the minds on all the terms of a written agreement in a case where the executing party challenged whether there was a meeting of the minds on a written agreement containing an arbitration clause). All that is required to meet this burden is an "unequivocal denial that the agreement had been made, accompanied by supporting affidavits . . . in most cases should be sufficient to require a jury determination on whether there had in fact been a meeting of the minds." *Par-Knit Mills, Inc.*, 636 F.2d at 55 (internal quotation marks omitted). In fact, this Court has stated that in addition to the unequivocal denial that the agreement had been made, the non-moving party need only submit "**some evidence** . . . to substantiate the denial." *Drews Distributing, Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347 (4th Cir. 2001) (internal quotation marks omitted) (emphasis added). In the end, "the task of weighing the evidence and choosing which side to believe would have been for a jury." *Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156, 161-62 (3d Cir.2009) (*citing Par-Knit Mills*, 636 F.2d at 54) (stating that the party opposing a motion to compel arbitration should receive "the benefit of all reasonable doubts and inferences that may arise); *Clar Productions, Ltd. v. Isram Motion Pictures Production Services, Inc.*, 529 F. Supp. 381, 383 (S.D.N.Y. 1982) (granting an evidentiary hearing to determine whether there was a meeting of the minds to arbitration agreement).

The District Court found as a matter of law that CitiFinancial Auto "accepted [Galloway's] offer . . . when CitiFinancial Auto began charging Galloway a lower monthly payment on her loan . . . as specified in the Agreement." JA 56. But Galloway specifically stated that CitiFinancial Auto did not lower her monthly scheduled payments as specified in the written Amendment Agreement and has outlined all of the material terms of the Amendment Agreement that were different than the actual agreement Galloway and CitiFinancial Auto were performing. *See supra* at Argument Section I(B)(2) (discussing the material differences between the Amendment Agreement and the actual performance of contractual obligations between Galloway and Santander including the principal amount owed, the monthly payment, effective date, payment due date and late fee). CitiFinancial Auto's lack of acceptance of all the terms of the written Amendment Agreement was substantiated by Galloway with supporting evidence: (1) statement under oath that CitiFinancial Auto did not accept her offer in the written Amendment Agreement (JA 17 at ¶ 21); (2) statement under oath that CitiFinancial Auto "lowered her scheduled monthly payments to $366.43" after November 14, 2008 (JA 17 at ¶ 23); (3) there is no writing of the agreement to pay the $366.43 per month payment between herself and CitiFinancial Auto (JA 17 at ¶ 24). In addition, Galloway further supported her contention that the written Amendment Agreement does not contain all the agreements of the parties by citing to her

repayment history which identifies $366.43 as the required monthly scheduled payment rather than the $365.57 identified in the written Amendment Agreement. JA 21. Moreover, the evidence clearly indicates that Galloway and CitiFinancial Auto were still negotiating the terms of any amendment to the RISC after the effective date of the Amendment Agreement and after Galloway executed the Amendment Agreement. *Moses.com Securities v. Comprehensive Software*, 263 F.3d 783 (8th Cir. 2001) (awarding an evidentiary hearing as to whether the parties had entered into an arbitration agreement where every draft of the contract included an arbitration provision but no final contract was signed by all the parties and one of the parties to the contract asserted that the contract was still open to negotiation).

Accordingly, Galloway provided the Court with sufficient evidence that CitiFinancial Auto did not accept all the terms of the written Amendment Agreement sufficient to raise a triable issue of fact regarding whether there was a meeting of the minds on all the terms of the written Arbitration Agreement. *Banner Entertainment, Inc. v. The Superior Court of Los Angeles County*, 62 Cal. App. 4th 348, 358 (1998). Since Santander failed to produce some other written agreement that contain all the agreements of the parties including the $366.43 scheduled monthly payment and an agreement to arbitrate, the triable jury question would be determinative. *Magness Petroleum Company v. Warren Resources of*

*California, Inc.*, 127 Cal. Rptr. 2d 159 , 163 (2003) (holding that "oral agreement to arbitrate future disputes . . . may [not] be enforced by the court on a petition to compel arbitration").  Galloway did everything required to entitle her to present these issues to a jury for resolution.  If was a clear error of law to remove these issues from the purview of a jury.

## III.    SANTANDER'S ESTOPPEL ARGUMENT IS NOT APPLICABLE TO THE RISC OR THE THIRD CONTRACT

Santander asserts that Galloway must be equitably estopped from disavowing the Amendment Agreement and the arbitration clause contained therein while at the same time "claiming benefits under other provisions of the same contract."  ECF #15 at 40-3.  Galloway, however, does not seek any benefits under the Amendment Agreement.  Rather, Galloway has consistently argued that the contractual relationship between Galloway and Santander is controlled by either the original RISC or the third contract entered into after November 14, 2008 with CitiFinancial Auto that did not contain a written arbitration agreement.  If this Court finds that the Amendment Agreement is a binding contract that controls the contractual relationship between Galloway and Santander then the Amendment Agreement requires Galloway to arbitrate her claims.  If the Court finds that the RISC or the third contract control the contractual relationship, then Galloway is not seeking any benefits under the Amendment Agreement and would not require

14

Galloway to arbitrate her claims. Regardless of which contract controls the contractual relationship between Galloway and Santander, however, equitable estoppel would not apply to any of the purported contracts.

## CONCLUSION

For the reasons set forth in the Opening Brief and herein and relying on the evidence contained in the Joint Appendix, Galloway requests that this Court reverse the District Court's Order Granting Santander's Motion to Compel Arbitration.

Respectfully submitted this 16th day of July, 2015.

              **/s/   Cory L. Zajdel**_____
Cory L. Zajdel, Esq.
Z LAW, LLC
301 Main Street, Ste. 2-D
Reisterstown, Maryland 21136
(443) 213-1977
clz@zlawmaryand.com

**Attorney for Appellant**

15

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of FED. R. APP. P. 28.1(e) or 32(a)(7) because this brief contains 3,496 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7).

2.  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using *Microsoft Office Word 2007* in *14pt Times New Roman*.


  **/s/   Cory L. Zajdel**
*Counsel for Plaintiff-Appellant*

16

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 16th day of July, 2015, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Robert J. Brener, Esq.
robert.brener@leclairryan.com
LeClairRyan
One Riverfront Plaza
Newark, NJ 07102
973-491-3347

Michael von Diezelski, Esq.
LeClairRyan
180 Admiral Cochrane Drive, Suite #370
Annapolis, MD 21401
michael.vondiezelski@leclairryan.com
410-224-3000

**Attorneys for Appellee Santander Consumer USA, Inc.**

I further certify that on the 17th day of July, 2015, I caused the required number of bound copies of the foregoing Reply Brief of Appellant to be placed in the mail via USPS Priority Mail to be filed with the Clerk of this Court and to all case participants, at the above listed address.

 /s/   Cory L. Zajdel
*Counsel for Plaintiff-Appellant*

17